O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ENRIQUE MEDRANO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. L-06-176 |
| | § | |
| CITY OF LAREDO, TEXAS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Plaintiff Enrique Medrano brought this suit against Defendant City of Laredo, Texas, his former employer, asserting a claim for unlawful age discrimination in violation of the Age Discrimination and Employment Act (ADEA). (Docket No. 1.) Defendant moves for summary judgment. (Docket No. 31.)

Background

Enrique Medrano was employed as a mechanic by the City of Laredo for over twenty years: first, from 1971 until 1979, and then from 1993 until his termination in 2006. (Docket No. 37-2, at 1.) Medrano served in many positions, but ultimately became a supervisor in the City of Laredo's Fleet Management Division. (Docket No. 31-3, at 2.) Medrano was responsible for the maintenance and repair of the Solid Waste Department's heavy vehicles and equipment. (Docket No. 37-2, at 3.)

In April 2001, the City purchased fleet management software known as the RTA system. (Docket No. 31-3, at 2.) The RTA system keeps track of, among other things, the preventative maintenance needs of the City's fleet of vehicles. Id. Work orders and parts requests are also entered into, or processed through, the RTA system. (Docket No. 37-2, at 3.) By Plaintiff's own admission, he did not use the RTA system effectively, id., and this lead to tensions with his supervisors.

In mid-2004, Jessica Hein, the Executive Secretary to the City Manager, was tasked with directing the City's fleet management services. (Docket No. 31-3, at 2.) Hein immediately had difficulty working with Medrano. Hein attests that Medrano, who had a history of prior disciplinary actions (Docket No. 31, Ex. K), continuously failed to properly manage the preventative maintenance of vehicles under his supervision. (Docket No. 31-3, at 2.) In a series of emails, Hein repeatedly asked Medrano to explain his tardiness in the preventative maintenance work, and to create a plan to remedy the past-due work and prevent it in the future. (Docket No. 31, Ex. M.) Medrano was suspended in December 2005 for failing to provide this plan. (Docket No. 31, Ex. K.) Hein believed Medrano's failure to properly manage the preventative maintenance work stemmed from his refusal to "adequately" use the RTA system, but maintains Medrano never

asked for additional training. (Docket No. 31-3, at 3.) Hein also claims Medrano violated policy regarding authorization for his employees' overtime; repeatedly filled out forms for ordering parts incorrectly; failed to correctly supervise daily consumption of fuels as required; disregarded vendor invoices, putting vendor accounts at risk; and failed to communicate messages from upper management to his employees. Id.

Medrano paints a different picture. According to his affidavit, he repeatedly asked for more training in the use of the RTA system but was ignored or rebuffed. (Docket No. 37-2, at 3-6.) He also attests that he was not given sufficient manpower to adequately perform his job. Id. at 4, 6. Medrano also contends Hein stated that she believed Medrano was not able to learn. Further, when Medrano asked, at one of the final meetings before his termination, whether Hein thought he was too old, she "did not reply nor did she deny that was what she thought." (Docket No. 37-2, at 4-5.) Medrano also avers that Tony Lara, the Fleet Management Manager and one of Medrano's supervisors, often complained about "older mechanics" and their inability to work with computers (Docket No. 37-2, at 4). Finally, Medrano attests that Hein repeatedly mentioned retirement as an alternative to his termination. Id. at 5. When he refused to accept retirement, Hein terminated him on February 1, 2006. Id.

Medrano filed a charge of discrimination with the Equal Employment Opportunity Commission, and received his right-to-sue letter on September 12, 2006. (Docket No. 1, Ex. A.) On December 8, 2006, Plaintiff filed the instant suit. (Docket No. 1.)

Discussion

Under the ADEA, it is unlawful for an employer to discharge an individual because of his or her age. 29 U.S.C. § 623(a)(1) (2006). A plaintiff can demonstrate age discrimination either through direct or circumstantial evidence. Berquist v. Wash. Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007).

Plaintiffs must first establish a prima facie case of age discrimination, at which point the employer must produce legitimate, non-discriminatory reasons for the employment decision. Id. Once the employer meets its production burden, the plaintiff must meet his ultimate burden of persuasion either: (1) by showing that the employer's offered reasons are false, or (2) by showing that even if the offered reasons are true, another motivating factor is the plaintiff's age. Id. at 356; Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005) (quoting Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)). If the plaintiff demonstrates that age was at least one motivating factor, then the employer must prove

that it would have made the same adverse employment decision regardless of any discriminatory animus. Machinchick, 398 F.3d at 352; see Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 336 (5th Cir. 2005).

To establish a prima facie case, Medrano must show that (1) he was discharged, (2) he was qualified for the position, (3) he was within the protected class at the time of the discharge, and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. Berquist, 500 F.3d at 349. Here, because Medrano asserts he did not receive the proper training, the City posits that he was not qualified for his position.  (Docket No. 31, at 2.)  For the purpose of establishing a prima facie case, however, Medrano had the necessary qualification. Berquist, 500 F.3d at 350-51.

The City produces summary judgment evidence showing that Medrano repeatedly failed to properly manage preventative maintenance work, failed to submit the plan of action Hein requested, failed to adequately use the RTA system, violated policy regarding employees' overtime, failed to correctly supervise fuel consumption, disregarded vendor invoices, and failed to communicate messages from upper management to his employees.

Medrano counters that he repeatedly requested, but was denied, additional training in the use of the RTA system. He also claims he submitted the plan Hein requested, and that some of his difficultly was due to an increased workload and the denial of his requests for additional manpower. Medrano insists that Hein told him he could not handle additional training, remained silent in the face of a direct accusation that she was motivated by his age, and repeatedly offered retirement as an alternative to termination. Moreover, Medrano claims Tony Lara often complained about older mechanics and their ability to work with computers. Lara was in the direct chain of supervision over Medrano. (Docket NO. 31, Medrano Dep. 149.) In emails Medrano sent to either Lara or Hein, he would routinely copy the other. (*E.g.*, Docket No. 31, Ex. M.) Lara either complained about Medrano's work directly or was copied on almost all the complaints Hein made to Medrano. *E.g.*, *id.* Lara and Hein would also email each other about Medrano's performance. *E.g.*, *id.*

While this evidence is hardly overwhelming, the Court concludes that Medrano has at least created a fact issue as to whether age was a motivating factor in the decision to terminate him. See Machinchick, 398 F.3d at 349, 355 (holding that emails sent by supervisor relatively close to termination date stating a desire to "strategically hire younger engineers" and describing Plaintiff as "inflexible" and not adaptable created a

jury issue on age discrimination"); <u>Bienkowski v. Am. Airlines, Inc.</u>, 851 F.2d 1503, 1507 (5th Cir. 1988) (finding supervisors comments that plaintiff look "sharp" if he was going to look for another job and comments about his inability to "adapt" as probative of discriminatory animus precluding summary judgment).

<u>Conclusion</u>

For the reasons outlined above, Defendant City's motion for summary judgment (Docket No. 31) is DENIED. The parties are DIRECTED to confer forthwith and submit a <u>joint</u> final pretrial order no later than April 10, 2009.

DONE at Laredo, TX, this 23rd day of March, 2009.

_____
George P. Kazen
United States District Judge